# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH KANZIE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AT&T MOBILITY SERICES, LLC, a Delaware limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:19-cv-02170-AJB-BGS<br><br>**ORDER ON DISCOVERY DISPUTE REGARDING ROG 16**<br><br>[ECF 19] |

## I. INTRODUCTION

The Court ordered the parties to submit a Joint Statement addressing their disputes as to Plaintiff's Interrogatory No. 16 (hereinafter "ROG 16"). The Parties were to address the relevancy of the requested discovery and proportionality under Federal Rule of Civil Procedure 26(b). On May 21, 2020 the parties filed their Joint Statement for Discovery Dispute regarding Plaintiff's ROG 16. (Doc. 19.) The Court will address the parties' positions as relevant to the Court's analysis of the dispute.

## II. LEGAL STANDARD

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3).

1  "The grounds for objecting to an interrogatory must be stated with specificity." Rule
2  33(b)(4). The party propounding the interrogatory may move to compel an answer if
3  the party fails to answer. Rule 37(a)(3)(B)(iii).
4       The requested discovery must be relevant to important issues in the case.
5  Relevant Evidence is defined in Federal Rule of Evidence 401: "Evidence is relevant
6  if (a) it has a tendency to make a fact more or less probable than it would be without
7  the evidence; and (b) the fact is of consequence in determining the action."
8       Further, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding
9  any non-privileged matter that is relevant to any party's claim or defense and
10 proportional to the needs of the case, considering the importance of the issues at stake
11 in the action, the amount in controversy, the parties' relative access to relevant
12 information, the parties' resources, the importance of the discovery in resolving the
13 issues, and whether the burden or expense of the proposed discovery outweighs its
14 likely benefit." Fed. R. Civ. P. 26(b)(1).
15      "District courts have broad discretion in controlling discovery" and "in
16 determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal.
17 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor*
18 *Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).
19      Rule 26(b)(2) also requires the court, on motion or on its own, to limit the
20 frequency or extent of discovery otherwise allowed by the rules if it determines that
21 (1) "the discovery sought is unreasonably cumulative or duplicative, or can be
22 obtained from some other source that is more convenient, less burdensome, or less
23 expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the
24 information by discovery in the action;" or (3) "the proposed discovery is outside the
25 scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).
26      The Advisory Committee emphasized that in adding the proportionality
27 language to Rule 26(b)(1) "the objective is to guard against redundant or
28 disproportionate discovery" and "to encourage judges to be more aggressive in

identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, Advisory Committee's note to 2015 amendment.

### III. ANALYSIS: RELEVANCE AND PROPORTIONALITY

ROG 16 requests:

IDENTIFY, by name, job title, dates of employment in the store, and last known contact information, every one of YOUR employees who worked in YOUR Pt. Loma store, at any time, between January 1, 2017 and December 1, 2017.

(Doc. 19 at 2[1].)

#### A. The Parties' Positions

The Plaintiff asserts several grounds as to why the identities of all employees who worked with Plaintiff at the store in Pt. Loma are relevant. First, Plaintiff asserts this discovery is needed to prove she was a qualified person who had a disability since Defendant has denied she is disabled. (*Id.* at 3.) Co-worker testimony is relevant to prove Plaintiff was disabled and her managers knew it. (*Id.*) She claims that presumably her managers will testify that they did not know she was disabled. (*Id.*) Secondly, she contends the discovery is needed because Defendant is asserting that she could not perform the essential duties of her job with or without an accommodation. Plaintiff argues that the other employees could describe the essential duties of her job. (*Id.*) An employer's description of the duties does not qualify as an undisputed statement of fact. (*Id.* at 3-4.) Lastly, Plaintiff states that other employees might corroborate that Plaintiff made multiple accommodation requests for time off and that it would not have been an undue hardship for Defendant to excuse her from work due to her disability. (*Id.* at 4.)

The Defendant responds that requesting a store roster is outside the scope of discovery because it is irrelevant to Plaintiff's claims. (*Id.* at 5.) The primary issue is whether Defendant was required to excuse Plaintiff's absences due to her alleged

---

[1] The Court cites the electronic pagination in CM/ECF unless otherwise noted.

disability. (*Id.*) Her peers had nothing to do with her termination, nor were they involved in Defendant's decision to deny her time off work. (*Id.*) As to whether a peer perceived her as disabled, the Defendant argues it is not relevant because the primary issue is whether Plaintiff's store manager was required to excuse her absences given Plaintiff's failure to follow the company's requirements for excusing time off. (*Id.* at 6.) In regard to relevancy to prove she could do the essential duties of her job with an accommodation, Defendant points out this case involves Plaintiff's attendance, which was the reason for her termination. (*Id.*) This is not a case involving at work accommodation issues such as whether Plaintiff could lift, stand, or walk, and whether these activities are essential job functions. (*Id.*) In fact, her peers cannot provide any information regarding whether attendance is an essential job function because they were all subject to the same guidelines. (*Id.* at 7)

### B. Plaintiff's Factual Allegations in the Complaint

For this analysis, the Court turns to the Factual Allegation section of Plaintiff's complaint, wherein she incorporated the following facts into all of her claims regarding disability discrimination.[2] Plaintiff describes her disability as a debilitating back condition. (Compl. ¶ 15.[3]) She alleges she needed an accommodation at work. (*Id.* ¶¶ 15-16.) For example, she needed to be allowed to occasionally sit. (*Id.* ¶ 15.) Plaintiff adds that her disabilities caused her to arrive late at work or miss work entirely when she sought medical treatment for her disabilities. (*Id.* ¶ 16.) She alleges she needed flexibility in her work schedule, but Defendant refused to accommodate her and instead fired her due to her disability related absences. (*Id.*) In paragraph 20, she asserts that she was wrongfully terminated for her alleged failure to follow guidelines. (*Id.*)

---

[2] The Court will not summarize the entire complaint for this dispute, only the relevant paragraphs for this analysis. (Doc. 1 [Notice of Removal], Exb. A (State Court Complaint ("Complaint") for the entire complaint [ECF 1-3].)

[3] For citations to the Complaint, the Court cites the paragraph numbers.

In her individual claims, Plaintiff reiterates her theory of the case.  In Claim One, alleging disability discrimination and wrongful termination she refers to and incorporates the preceding factual allegations. (*Id.* ¶ 19.)  In her Second Claim for Failure to Accommodate, she states that the reasonable accommodation she needed was a finite time off work to treat, recuperate and heal from the symptoms associated with her disability. (*Id.* ¶ 33.)  In her Third Claim for Failure to Engage in the Interactive Process, she alleges she gave notice to the employer that she had a disability that required medical leaves of absence. (*Id.* ¶ 51.)  In her Fourth Claim alleging Retaliation, she claims that she requested intermittent medical leave of absence for her disability, but she was retaliated against by Defendant for this request which resulted in her termination. (*Id.* ¶ 60.)

Given Plaintiff's factual allegations combined with her arguments in the Joint Statement, the relevancy and proportionality considerations in this dispute regard the following issues:

(1) Whether Plaintiff was disabled, and whether the Defendant knew so;

(2) Whether being present at work was an essential duty of her job;

(3) Whether she requested of Defendant a medical leave of absence.

The initial inquiry for the Court is whether Plaintiff has shown that a store roster of coworkers "… has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401.  For this analysis the Court addresses the elements of the claims that cover this dispute.

### C. Disability Discrimination and Wrongful Termination

Plaintiff claims the discovery is relevant to her FEHA claim of disability discrimination and wrongful termination.  "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . .based on a theory of disparate treatment." *Guz v. Bechtel*

*National Inc.*, 24 Cal.4th 317, 354 (2000). This "test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." *Id.* "[B]y successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Id.*

Plaintiff must first establish a prima facie case of discrimination. *Id.* The elements of a prima facie case of disability discrimination under FEHA are that a Plaintiff: (1) was a member of a protected class; (2) is otherwise qualified to perform his job; (3) was subjected to adverse employment action; and (4) some other circumstances suggest discriminatory motive. *Id.* at 355.

"If [she] does so, the burden shifts to the employer to show a lawful reason for its action." *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1730 (1994). The employer must show that the procedure by which the employee was terminated was "validly and fairly devised and administered to serve a legitimate business purpose." *Id.* at 1733.

The burden then shifts to the employee to prove that "the proffered justification is mere pretext." *Id.* at 1730. The employee "must produce substantial responsive evidence" on this last point. *Id.* at 1735. "Pretext may be inferred from the timing of the discharge decision, the identity of the decision-maker, or by the discharged employee's job performance before termination." *Hanson v. Lucky Stores, Inc.,* 74 Cal. App. 4th 215, 224 (1999) (citing *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476, 479 (1992)). "Pretext may be demonstrated by showing 'that the proffered reason had no basis in fact, the proffered reason did not actually motivate the discharge, or, the proffered reason was insufficient to motivate discharge." *Id.* (citing *Gantt v. Wilson Sporting Goods Co.* 143 F.3d 1042, 1049 (6th Cir.1998)).

This test is only applicable at the summary judgment stage. By the time the case is submitted to the jury, the plaintiff has already established his or her prima facie case, and the employer has already proffered a legitimate, nondiscriminatory reason

for the adverse employment decision. The shifting burdens drop from the case and the jury is left to decide which evidence it finds more convincing. *See Muzquiz v. City of Emeryville*, 79 Cal. App. 4th 1106, 1118 (2000).

The Court considers Plaintiff's request for a store roster in the context of what Plaintiff has to prove for her claim of wrongful termination. Plaintiff has to prove she was disabled, and that the Defendant was so aware. As regards proving disability, the Court finds that co-workers who had contact with her could testify about their observations of her complaints and any physical pain from her back condition. However, the Court finds ROG 16's request for a store roster for all the co-workers is overbroad in that it includes everyone, not only those that had frequent and direct contact with her. Further, such lay witness testimony about observations as opposed to Plaintiff's medical records has limited probative value. Her peers are not trained medical professionals, and any conversations with the Plaintiff about her condition would be self-serving and only corroborative at best. The much more probative and important evidence of her having a disability are her medical records which would necessarily include her doctor(s)' assessment of her condition and her need for time off to heal and recuperate. The Plaintiff has not summarized her medical records, nor explained why coworkers' testimony is nonetheless important to resolve this issue. One of the proportionality factors this Court is to consider under Rule 26(b)(1) is "the importance of the discovery in resolving the issues." Without any summary of other discovery available such as medical records, the Plaintiff is in essence asking the Court to evaluate the importance of her request in a vacuum. The Court declines to do so.

Further, Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The Court, under this Rule, exercises its discretion to deny ROG 16

because discovery to prove disability can be obtained from another, more reliable source, thereby making ROG 16's request cumulative and of little probative value. Notwithstanding, if after obtaining and reviewing her medical records Plaintiff still believes she needs a limited roster to establish her disability, then she can timely follow the Court's chambers rules regarding discovery disputes.

As regards the relevancy of a store roster to prove Defendant was put on notice of her disability and her requests for medical leave of absence, ROG 16 is overbroad. Only co-workers who witnessed Plaintiff advising her supervisors of her need for medical leave due to her back condition would be relevant. Further, Plaintiff proffers that her two store managers during the eight-month time frame at issue will *presumably (*emphasis added) testify that they did not know Plaintiff was disabled and had no notice of her disability. It is clear from this contention by the Plaintiff that ROG 16's request for coworkers who witnessed Plaintiff tell her managers of her disability is not ripe. It is based on the speculation that her managers presumably will deny notice, not that they do in fact deny notice. Nor does Plaintiff provide what discovery she possesses that shows her managers were not aware of her disability as well as her requests for medical leaves of absence. Written correspondence including emails, My Coach evaluations, Employee Attendance Reports which list illness absences, medical correspondence received regarding Plaintiff, Health Care Provider forms submitted by Plaintiff, text messages regarding her disability and need for leave, and the like are the type of information that the Plaintiff would need to present in order for the Court to perform its obligatory Rule 26(b)(1) analysis to determine the importance of the discovery in resolving these issues. The Court also has its hands tied in performing its Rule 26(b)(2) sua sponte duty to only allow discovery which is proportional to the needs of the case. At this point in the litigation the Plaintiff has failed to provide the full picture as to why coworker testimony is still important to prove that she gave notice of her disability to the Defendant. Therefore, as ordered

above, and for these reasons, the Court denies Plaintiff's ROG 16 for this relevancy ground. It is without prejudice as indicated above.

### D. Failure to Reasonably Accommodate

Plaintiff claims ROG 16 will provide relevant discovery to show that she requested medical leaves of absence, that the Defendant knew of her requests, and that she could perform the essential duties of her job with this accommodation.

Under FEHA, "an employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees." *Prilliman v. United Air Lines, Inc.*, 53 Cal.App.4th 935, 950–951 (1997).

"Reasonable accommodation includes, (1) 'Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities. [¶] (2) Job restructuring, *part-time or modified work schedules, reassignment to a vacant position,* acquisition or modification of equipment or devices, adjustment or modification . . . of examinations, training materials or policies, the provision of qualified readers or interpreters, *and other similar accommodations* for individuals with disabilities." *Hanson*, 74 Cal. App.4th at 225 (quoting § 12926, subd. (m); Cal. Code Regs., tit. 2, § 7293.9, subd. (a). "However, FEHA's list of accommodation measures, by its terms, is incomplete, and so we may look to its federal cognates for guidance." *Id.* at 225-26 (citing *Prilliman*, 53 Cal.App.4th 948). In *Hanson v. Lucky Stores*, 74 Cal. App. 4th at 225–26 the court held that a finite leave of absence can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties.

As indicated in her complaint, Plaintiff claims Defendant did not reasonably accommodate her by not granting her medical leave of absences. She contends the

1 identity of all her coworkers could be relevant to test the Defendant's description of
2 the essential duties of her job, as well as corroborate her multiple accommodation
3 requests, and that it would not have been an undue hardship on the Defendant to
4 excuse her from work.

5 The Court has concerns about whether the description of the essential duties of
6 her job is a disputed issue given the factual allegations in her complaint and arguments
7 in the Joint Motion. In both, the only identified essential duty of her job in dispute is
8 the requirement that Plaintiff be present at work. This is not a case involving at work
9 accommodation issues such as whether Plaintiff could lift, stand, or walk, and whether
10 these activities are essential job functions. In fact, Plaintiff's main liability contention
11 as regards her discrimination claims centers around whether Defendant's reason for
12 terminating Plaintiff was due to her non compliance with its attendance policy, as
13 Defendant claims, or whether this reason was pretext, as Plaintiff claims. She argues
14 her request for this accommodation, medical leave, and her disability, were the true
15 motives behind her termination.

16 Further, it is unclear how her peers could provide any relevant information
17 regarding whether attendance is an essential job function.  All of her peers were
18 employed under the same attendance guidelines.  The Plaintiff has not explained how
19 these lay witnesses could provide relevant information that being at work was *not* an
20 essential function of Plaintiff's job. *See Samper v. Providence St. Vincent Med. Ctr.,*
21 675 F.3d 1233, 1237–38 (9th Cir. 2012) (It is a "rather common-sense idea ... that if
22 one is not able to be at work, one cannot be a qualified individual.") (quoting
23 *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)).

24 As regards her claim that she needs the store roster to corroborate that Plaintiff
25 made multiple requests for medical leave, the Court adopts its holding above as
26 concerned notice of her disability.  It is also denied without prejudice under the same
27 conditions above.

28

Finally, the Plaintiff contends that other employees might corroborate that Plaintiff made multiple accommodation requests for time off and that it would not have been an undue hardship for Defendant to excuse her from work due to her disability. Plaintiff adds no additional facts as to how coworkers are able to opine that allowing Plaintiff to take time off would not have been undue hardship for Defendant. Plaintiff appears to base its request on Defendant's 15th Affirmative Defense, Undue Hardship. The Defendant does not address this issue, nor has either party identified what if any discovery has been done on this defense. The Court questions whether this defense will even be raised given Defendant's contention that Plaintiff was terminated for not getting her medical absences approved under Defendant's attendance policy. The Court denies ROG 16 without prejudice. The parties are to follow the discovery dispute process before bringing this dispute again.[4]

Given the Court's order herein, the Court finds the dispute over privacy rights to be moot at this time.

## IV.   CONCLUSION

AT&T is not required to response to ROG 16.

**IT IS SO ORDERED.**

Dated: June 16, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge

---

[4] For future contested discovery disputes, each party should address the elements of claims/affirmative defenses that are in dispute, detail the discovery that has been provided on these issues, and explain why or why not the requested discovery complies with Rule 26(b)(1)-(2) and FRE 401.